## CHICAGO, DULUTH & GEORGIAN BAY TRANSIT CO.
### v.
### CORPORATION & SECURITIES COMMISSION.

1. CORPORATIONS—PRIVILEGE FEE—TAXATION.

The annual privilege fee levied upon a corporation is not a property tax but is a tax on the franchise to do business as a corporation within the State (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

2. SAME—TAXATION OF CORPORATION'S INTANGIBLES.

The tax imposed upon intangibles of a corporation under the corporation tax act is not a property tax, but is an excise tax in which the designated property of the corporation is used solely as a yardstick (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

3. SAME—INTANGIBLES—TAXATION—COMMERCIAL   DOMICILE—BUSI-
NESS SITUS—STATUTES.

Amendment of corporation tax statute which set forth "that
in determining the amount or value of intangible property, in-
cluding capital investments, owned or used in this State by
either a domestic or foreign corporation, such property shall
be considered to be located, owned or used in this State for
the purposes hereof, if used in or acquired from the conduct
of its business in this State, irrespective of the domicile of
the corporation," gave recognition to the theory or doctrine
of commercial domicile and of business situs for the purpose
of computing and imposing franchise and privilege fees (2
Comp. Laws 1929, § 10143, as amended by Act No. 102, Pub.
Acts 1935).

4. SAME—INTANGIBLES—TAXATION—COMMERCIAL DOMICILE.

In taxing intangibles of a corporation, the State where it is
shown the corporation receives its greatest protection and
benefits and where the greatest proportion of its control exists
is the commercial domicile having constitutional power to levy
a tax.

5. SAME—COMMERCIAL DOMICILE—STEAMSHIP COMPANY.

For purposes of imposing annual privilege fee upon Indiana cor-
poration which owns two steamships plying between ports on
the Great Lakes in this and other States and Canada, whose
executive offices, officers and all except one director are in
Detroit, and which is not shown to have headquarters for
management of its business elsewhere, the commercial domicile
is in Detroit (2 Comp. Laws 1929, § 10140, as amended by
Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended
by Act No. 102, Pub. Acts 1935).

6. SAME—FOREIGN CORPORATIONS—PRIVILEGE FEE—INTERSTATE COM-
MERCE.

A privilege fee or tax may by statute be required of a foreign
corporation as a condition of doing business in this State,
providing an undue burden on interstate commerce is not
thereby imposed.

7. SAME—PRIVILEGE FEES—DISCRIMINATION.

Where the same privilege fee for the privilege of doing busi-
ness as a corporation is required of a domestic corporation as
from a foreign corporation for the right to do business in this
State, no discrimination results.

8. SAME—PRIVILEGE FEES—BASIS OF COMPUTATION.

Under statute providing for privilege fees upon corporations doing business in this State, the computation of the privilege fee, instead of using the full value of property owned by the corporation should be made on the basis of the ratio of such property as is owned or used in this State bears to the entire property of the corporation (2 Comp. Laws 1929, § 10143, as amended by Act No. 102, Pub. Acts 1935).

9. CERTIORARI—CORPORATION TAX APPEAL BOARD—FINDING OF FACT.

On appeal in nature of certiorari from corporation tax appeal board, the Supreme Court does not disturb a finding of fact by the board that is supported by competent evidence.

10. CORPORATIONS—PRIVILEGE FEES—INTERSTATE AND INTRASTATE COMMERCE—FINDING OF CORPORATION TAX APPEAL BOARD.

Finding of fact by corporation tax appeal board that corporation's two vessels are not exclusively used in interstate and foreign commerce is not disturbed where there is evidence showing that some of its business is intrastate in character, hence value of such vessels should not be wholly disregarded in computing privilege fee (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

11. SAME—PRIVILEGE FEES—TANGIBLE PERSONAL PROPERTY OUTSIDE OF STATE.

Items of tangible personal property at all times located without the State should not be included in the computation of a foreign corporation's privilege fee for doing business in this State (2 Comp. Laws 1929, § 10143, as amended by Act No. 102, Pub. Acts 1935).

12. SAME—PRIVILEGE FEES—INTANGIBLES—BANK DEPOSITS OUT OF STATE—COMMERCIAL DOMICILE—BUSINESS SITUS.

Deposits in out-of-State banks by foreign corporation whose commercial domicile is in this State were properly included in computation of its privilege fee since such intangible assets are derived through the conduct of its over-all business from such domicile and are subject to control and use of the corporation's officers located in this State (2 Comp. Laws 1929, § 10143, as amended by Act No. 102, Pub. Acts 1935).

13. SAME—PRIVILEGE FEES—INTERSTATE AND INTRASTATE COMMERCE—DUE PROCESS.

Statutory imposition of privilege fee upon foreign corporation engaged in both interstate and intrastate business in this State and maintaining its commercial domicile herein, when

measured by the local or intrastate business, property, or capital only, does not contravene the interstate commerce clause of the Constitution of the United States or the due process clauses of either that or the State Constitution (U. S. Const. art. 1, § 8, clause (3); am. 14, § 1; Mich. Const. 1908, art. 2, § 16; 2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

14. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.

No costs are allowed where neither party fully prevails on appeal in nature of certiorari in case involving computation of privilege fee of foreign corporation doing interstate and intrastate business in this State (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

Appeal from Corporation Tax Appeal Board. Submitted June 3, 1947. (Docket No. 6, Calendar No. 43,396.) Decided October 13, 1947.

Chicago, Duluth & Georgian Bay Transit Company, an Indiana corporation, appealed to Corporation Tax Appeal Board from determination of Corporation and Securities Commission using certain property in fixing privilege fee. Determination affirmed. Plaintiff reviews by appeal in nature of certiorari. Modified and affirmed.

*Lucking, VanAuken, Schumann & Greiner,* for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Gregory H. Frederick,* Assistants Attorney General, for defendant.

NORTH, J. This appeal involves determination of the amount of plaintiff's corporation privilege fee for the year 1944. From the decision of the

Michigan corporation and securities commission as affirmed by the corporation tax appeal board, plaintiff has appealed, leave having been granted. Plaintiff, the Chicago, Duluth & Georgian Bay Transit Company, is incorporated under Indiana laws. As such foreign corporation, admitted to do business in Michigan, under the law of this State it is required to pay annually a corporation privilege fee. In part the statute reads:

"SEC. 4. Every corporation organized or doing business under the laws of this State (with specified exceptions) shall, * * * for the privilege of exercising its franchise and of transacting its business within this State, pay to the secretary of State* an annual fee of two and one-half mills upon each dollar of its paid-up capital and surplus." 2 Comp. Laws 1929, § 10140 as amended by Act No. 13, Pub. Acts 1933 (Ex. Sess.) (Comp. Laws Supp. 1940, § 10140, Stat. Ann. § 21.205).

As to the method of computing the amount of privilege fees, by statute it is provided:

"SEC. 5. * * * Such computation shall be made upon the corporation's property, both tangible and intangible, owned or used in Michigan in the ratio that such property bears to the entire property of the corporation, and such ratio shall be applied by the secretary of State* to determine the amount of authorized capital stock owned or used in Michigan, and to determine what portion of the corporation's paid-up capital and surplus, severally, are owned or used in Michigan. * * * The term 'surplus' as used in this act, shall be taken and deemed to mean the net value of the corporation's property, less its outstanding indebtedness and

---

* The powers and duties of the secretary of State under this act were transferred to the corporation and securities commission by Act No. 13, § 3, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 9769-3, Stat. Ann. § 19.783).—REPORTER.

paid-up capital.   *   *   *   None of the property or capital of any corporation subject to paying the privilege fee prescribed in section four which is located without the State of Michigan, and none of the capital or surplus of such corporation represented by property exclusively used in interstate commerce, shall in any case enter into the computation of the net amount of the authorized capital, or the capital and surplus, as the case may be, upon which the computation of the privilege fees shall be made: *Provided, That in determining the amount or value of intangible property, including capital investments, owned or used in this State by either a domestic or foreign corporation, such property shall be considered to be located, owned or used in this State for the purposes hereof, if used in or acquired from the conduct of its business in this State, irrespective of the domicile of the corporation.*" 2 Comp. Laws 1929, § 10143, as amended by Act No. 102, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 10143, Stat. Ann. § 21.208).

Hereinafter we refer to the above italicized portion of the statute as the 1929 amendment. Plaintiff's principal business is the operation of two steamships on the Great Lakes between ports in New York, Ohio, Michigan, Illinois, Minnesota and the Dominion of Canada. The port of call or home port of plaintiff's steamships is Michigan City, Indiana; and taxes on the vessels are there paid. Plaintiff maintains a traffic office in Chicago. It has ticket offices at Chicago, Duluth, Buffalo, Cleveland, Detroit and Mackinac Island. Its principal bank accounts are in Chicago. Its executive offices are in Detroit, Michigan. All of plaintiff's officers are residents of Detroit; and with one exception its five directors likewise reside in Detroit.

The Michigan ports at which plaintiff's vessels land are Detroit, Mackinac, Sault Ste. Marie,

Houghton and Isle Royale. But only a comparatively small part (2.98 per cent.) of plaintiff's revenue is derived from its business between Michigan ports. Only 11.33 per cent. of its passengers and 7.16 per cent. of its mileage are incident to plaintiff's business between Michigan ports. It is conceded that the international boundary line is crossed by plaintiff's ships on trips between some of the Michigan ports.

It is the contention of plaintiff-appellant that the Michigan corporation and securities commission and the corporation tax appeal board were in error when in the computation of plaintiff's privilege fee there was included each of the following items:

(1). $137,106.25, being 80 per cent. of the value of plaintiff's two vessels, less depreciation;

(2). $2,741, inventories of propellers located outside of Michigan;

(3). $145,115.76, deposits in banks outside of Michigan.

The Michigan corporation and securities commission, and finally the corporation tax appeal board in including each of the three above noted items in computing plaintiff's privilege fee, held (1) that plaintiff had a business situs in Michigan, (2) that for the purpose under consideration all of plaintiff's capital and surplus was located in Michigan, and (3) that none of the above noted items were "exclusively used in interstate commerce."

As against the correctness of the commission's determination, appellant makes the following contentions: (a) That the doctrine of commercial domicile has not been adopted by statute and does not prevail in Michigan, and that the business situs doctrine as adopted by statute in this State is limited to intangible property used in or acquired from

Michigan business; (b) that the value of appellant's two vessels should be entirely excluded or at most included "in proportion to appellant's interstate business" in computing the privilege fee because such vessels are used exclusively in interstate commerce and are continuously moving in and out of Michigan territory; (c) that item (2), $2,741 inventories of propellers, was erroneously included as a basis of computing appellant's privilege fee, because this item of tangible personal property has at all times been located outside of Michigan; and (d) that the commission erred by including in the computation of appellant's privilege fee the $145,115.76, bank deposits outside of Michigan, because this item was not used in or acquired from appellant's Michigan business.

At the outset it may be noted that the following is settled law in this jurisdiction. An annual privilege fee levied upon a corporation is not a property tax. Instead, it is a tax on the franchise to do business as a corporation within this State. *Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich. 261. And the tax imposed upon the intangibles of a corporation under this act is not a property tax but an excise tax in which the property is merely used as a yardstick or basis of computation. *In re Truscon Steel Co.,* 246 Mich. 174; *In re Detroit Properties Corp.,* 254 Mich. 523. In view of the above it is obvious that *Roberts* v. *Township of Charlevoix,* 60 Mich. 197, which involved only the right to collect an ad valorem tax, is not controlling of the instant case. Likewise *Graham* v. *Township of St. Joseph,* 67 Mich. 652, involved only an ad valorem assessment under the general tax law and is not at all decisive of the case at bar.

Also at the outset, it is of prime importance to determine whether the record in the instant case

discloses that plaintiff has a commercial domicile or a business situs as to its intangibles in Michigan. In *Udylite Corp. v. Corporation & Securities Commission, ante,* 1, we held that by the 1929 amendment to the statute hereinbefore quoted, the legislature of this State gave recognition to the theory or doctrine of commercial domicile and of business situs for the purpose of computing and imposing franchise and privilege fees. The theory and factual justification of such legislation has been stated as follows:

"We perceive the law to be that where the corporation has only a paper domicile, where the only function performed by the State of incorporation is to breathe life into the corporation, and where no substantial corporate activities are thereafter carried on in that State, then the law looks at such corporation and says that that State where, under the facts, the corporation receives its greatest protection and benefits, that State where the greatest proportion of its control exists, that State shall be the commercial domicile, with constitutional power to tax income from intangibles." *Southern Pacific Co. v. McColgan,* 68 Cal. App. (2d) 48, 81 (156 Pac. [2d] 81).

See *State v. First Bank Stock Corp.,* 197 Minn. 544 (267 N. W. 519, 269 N. W. 37); affirmed by the United States supreme court, 301 U. S. 234 (57 Sup. Ct. 234, 81 L. Ed. 1061, 113 A. L. R. 228). Also *Memphis Natural Gas Co. v. Beeler,* 315 U. S. 649 (62 Sup. Ct. 857, 86 L. Ed. 1090).

As to the factual aspect of the instant case, we have already noted that plaintiff's executive offices are in Detroit, Michigan. All of its officers reside there. So do all of its directors with one exception. Its president, a vice president and treasurer have offices in the National Bank Building, Detroit. Its

secretary and general counsel has an office in the Ford building. The somewhat voluminous correspondence in this record and all procedural papers concerning the controversy involved in the instant case, a matter affecting plaintiff's general business, appear to have been exclusively in charge of the Detroit officers. At least one of such Detroit communications was from plaintiff's "general auditor," apparently also located there. It is of persuasive importance to note that plaintiff's ships on their regularly scheduled routes do not enter any port in Indiana, the State of plaintiff's incorporation. Further, there is no indication in the record that plaintiff has headquarters for the management of its business anywhere outside of Detroit. Clearly plaintiff has its commercial domicile in Detroit, Michigan. See *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193 (56 Sup. Ct. 773, 80 L. Ed. 1143); and *Udylite Corp.* v. *Corporation & Securities Commission, supra.*

(1). WAS APPELLEE IN ERROR WHEN IN COMPUTING PLAINTIFF'S PRIVILEGE FEE IT INCLUDED THE FULL VAULE OF PLAINTIFF'S TWO VESSELS? As noted above the privilege fee is not a property tax. As heretofore stated, the property tax on its vessels is paid by plaintiff in Indiana. Nonetheless as a foreign corporation doing business in Michigan a privilege fee or tax may by statute be required of it as a condition of doing business in this State, providing an undue burden on interstate commerce is not thereby imposed.* A like fee is required of domestic corporations, and hence there is no discrimination. However, these vessels are tangible personal property, and therefore they do not come within the

---

* Foreign commerce is included in the term "interstate commerce" as used in the above quoted statute. *Detroit International Bridge Co.* v. *Corporation Tax Appeal Board,* 267 Mich. 384.

1929 amendment to the statute which has to do with "intangible property" only. The manner of applying the yardstick in computing the privilege fee is definitely provided in the statute as follows: "such computation shall be made upon the corporation's property, * * * owned or used in Michigan in the ratio that such property bears to the entire property of the corporation." Because of this definite provision in the statute, the computation of the privilege fee, instead of having been made on the basis of the full value of plaintiff's vessels, should have been made on the basis of "the ratio that such property (owned or used in Michigan) bears to the entire property of the corporation." In the above respect we find that the commission's computation was erroneous.

We are not in accord with appellant's contention that its vessels are used *exclusively* in interstate or foreign commerce, and that since the quoted statute provides that in computing a corporation's privilege fee "none of the capital or surplus of such corporation represented by property exclusively used in interstate commerce, shall in any case enter into the computation of the net amount of the authorized capital, or the capital and surplus, as the case may be, upon which the computation of the privilege fees shall be made," there was error in considering the value of these vessels at all in computing its privilege fee. To the contrary appellee asserts that since appellant's vessels on their regular routes travel from Michigan ports to Michigan ports they are not *exclusively* used in interstate (or foreign) commerce; and therefore may be considered in the computation of appellant's privilege fee. Under the record a question of fact was presented as to whether appellant's vessels are used *exclusively* in interstate or foreign commerce. While it is con-

ceded in the record "that the international boundary line is crossed at different points on a trip from Detroit to Mackinac;" and further, "This is true also on a trip between Detroit and Isle Royale and also Houghton;" nonetheless there are other Michigan ports between which plaintiff's boats ply, and that circumstance renders the above concession inconclusive. There was received in evidence written documents which emanated from appellant's officers, among them the following. Appellant's secretary and general counsel wrote the commission a letter from which we quote:

"Actually by far the greatest portion of company's business is interstate and foreign commerce. * * * Only a *very* small proportion of company's business is *intrastate* in character, that is, comprised of transportation of passengers from one point in Michigan to another point in the same State over a route lying wholly within the State. * * * The actual trip mileage for each of company's own vessels between consecutive Michigan ports where vessel has not meantime passed outside of Michigan territorial limits, is the following: (Here is inserted figures as to mileage, vessel tonnage, et cetera.) * * *

"It is thus apparent that said 25.39 per cent. is the outside maximum of company's possible *intrastate* business from and relative usage of its said two vessels in Michigan. * * *

"I think the correct interpretation of section 5, Act No. 85 (being the statute hereinbefore quoted) above mentioned is to the same effect that this particular tax should be assessed only upon 'the corporation's property * * * owned or used in Michigan in the ratio that such property bears to the entire property of the corporation.'

"The statutory specification 'owned or used in Michigan' when applied to property constantly passing away from and subsequently returning to Mich-

igan points, would not comprehend such property while actually outside the State, and would therefore require some sort of an apportionment to represent the fair average of value constantly within the State.

"Under foregoing principles it is submitted that only such proportion of present company's vessel property should be included in its capital for the computation of this tax which will correspond to the proportion of the Michigan intrastate usage thereof, not exceeding in any event the foregoing percentage basis of 20 per cent."

A schedule prepared by plaintiff and received in evidence which purports to show the proportion of percentage of plaintiff's Michigan business relative to its total business contains the following: "Percentage of intrastate to total," passengers 11.33 per cent., revenue 2.98 per cent., mileage 7.16 per cent. In appellant's brief filed herein it is stated:

"Appellant (in its report to the commission) solved the problem raised in the peculiar nature of vessel property by including in its computation of privilege fees a proportion of vessel value based on Michigan business to interstate business."

We would not be justified on the record before us in disturbing the finding of fact by appellee that appellant's vessels are not *exclusively* used in interstate (and foreign) commerce. The contention of appellant that in computing its privilege fee the value of its vessels should be wholly disregarded is not tenable.

(2). Was There Error in the Computation of the Privilege Fee by Including $2,741 Inventory Value of Personal Property (Largely Propellers) Located at all Times Outside of Michigan? These items of tangible personal property have at all times been located outside of Michigan jurisdiction. They

have never been "used" in plaintiff's business in Michigan. If they are ever used by plaintiff in its Michigan business, obviously it will be when, if ever, they become a part of plaintiff's vessels, and enter into the computation of the privilege fee under our holding in (1) above. These items of tangible personal property should not have been included in the computation of plaintiff's privilege fee. Our holding in this respect is necessitated by the express provision in the controlling statute, wherein it reads:

"None of the property or capital of any corporation subject to paying the privilege fee prescribed in section four which is located without the State of Michigan * * * shall in any case enter into the computation of the net amount of the authorized capital, or the capital and surplus, as the case may be, upon which the computation of the privilege fees shall be made." 2 Comp. Laws 1929, § 10143, as amended by Act. No. 102, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 10143, Stat. Ann. § 21.208).

(3). ' WAS THERE ERROR IN COMPUTING PLAINTIFF'S PRIVILEGE FEE BY INCLUDING IN SUCH COMPUTATION PLAINTIFF'S BANK DEPOSITS LOCATED OUTSIDE OF MICHIGAN? This item differs materially from (1) and (2) above considered in that they consisted of tangible personal property and were not within the 1929 amendment to the statute which relates to intangibles only. Plaintiff's bank deposits are intangible assets, and as such are within the terms of the italicized portion of the statute hereinbefore quoted. As to this item (3) the test is this: Are plaintiff's bank deposits outside of Michigan such that it can be said they are "used in or acquired from the conduct of its business in this State, irrespective of the domicile of the corporation."

Since, as we have already indicated, by reason of plaintiff's having maintained its commercial domicile in this State through which its over-all business is transacted, it follows that its bank deposits derived from such business were "acquired" from its business conducted in Michigan. Further, the record fairly discloses that in the conduct of its over-all business from its Detroit headquarters, plaintiff *uses* its bank deposits regardless of whether such deposits are within or without Michigan. Hence all of these deposits are "used" in Michigan. Under the facts of the instant case we conclude that plaintiff's intangibles consisting of deposits in banks outside of Michigan were properly included in the computation of its privilege fee. To the same effect see *Udylite Corp.* v. *Corporation & Securities Commission, supra.*

We are mindful it is conceded that plaintiff's deposits in banks located outside of Michigan are "from the sale of tickets sold outside the State of Michigan;" and it is not controverted "that expenses outside of Michigan are paid by check upon deposits in banks outside of Michigan." Notwithstanding the manner in which plaintiff conducts the phase of its business just noted, still we are of the opinion that these intangible assets were properly included as a basis of computing plaintiff's privilege fee. Under the record it is not only a fair but almost an irresistible inference that all of plaintiff's bank deposits, including those outside of Michigan, are subject to the control and use of plaintiff's officers who in fact are located in Michigan, and who conduct and control plaintiff's business in Michigan where plaintiff clearly has a commercial domicile. Under the facts here presented all of plaintiff's bank deposits, including those outside of Michigan, are integrated in its general business, are part and parcel thereof; and as such are used in the over-all

conduct of plaintiff's business which is carried on by its officers and directors here in Michigan. Under such circumstances plaintiff's bank deposits located outside of Michigan were properly used as a basis of computing plaintiff's privilege fee. See *Wheeling Steel Corp.* v. *Fox, supra.*

Appellant also raises the issue as to whether the statutory imposition of the privilege fee, as herein construed, does not violate the interstate commerce clause of the Federal Constitution[*] or the due process clause of the State[†] and Federal Constitutions.[‡] Nothing appears in the record from which it could be concluded that imposition of the privilege fee is an undue burden upon plaintiff's interstate commerce business; and we do not understand that appellant so contends. If, as we hold, the privilege fee is not shown by the record to be an undue burden upon plaintiff's interstate commerce business, it is not in contravention of either Federal or State constitutional provisions. In *Pacific Telephone & Telegraph Co.* v. *Tax Commission of Washington,* 297 U. S. 403, 413 (56 Sup. Ct. 522, 80 L. Ed. 760; 105 A. L. R. 1), Justice Brandeis, speaking for the court, said: "a tax upon the local privilege only must be held valid in the absence of proof that it imposes an undue burden upon interstate commerce." In an extensive note to the above case in volume 105 A. L. R. at page 39 it is said:

"State excise or privilege taxes upon foreign corporations engaged in both intrastate and interstate commerce are generally sustained, as against objections based on the commerce clause, where the taxes are measured by the local or intrastate business, income, property or capital only."

[*] See U. S. Const. art. 1, § 8, clause (3).—REPORTER.
[†] See Mich. Const. 1908, art. 2, § 16.—REPORTER.
[‡] See U. S. Const. Am. 14, § 1.—REPORTER.

We are of the opinion that the statutory provision for the privilege fee in this State is not violative of the interstate commerce clause of the Federal Constitution or of the due process clause of either the Federal or Michigan Constitutions.

The privilege fee as computed in this case by appellee is set aside and the case remanded to the Michigan corporation and securities commission for the purpose of recomputing plaintiff's privilege fee under the statute and in accordance with our opinion herein. Neither party having fully prevailed, no costs are awarded.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. BUTZEL and DETHMERS, JJ., did not sit.