## THE MARKET PLACE v CITY OF ANN ARBOR

Docket Nos. 70084, 71129. Submitted November 7, 1983, at Lansing.—
Decided May 14, 1984. Leave to appeal applied for.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 71 Am Jur 2d, State and Local Taxation § 28.
[2] 71 Am Jur 2d, State and Local Taxation § 30.
[3] 72 Am Jur 2d, State and Local Taxation § 787.
[4] 71 Am Jur 2d, State and Local Taxation § 74.
[5, 6] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 127.
[7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 129.
[8] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 410.
[9] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 128.

had implicitly found the license fee to be a property tax and that because plaintiff sought a refund of a property tax the Tax Tribunal, not the circuit court, had exclusive jurisdiction over the action. Plaintiff contended that the license fee was an excise tax not authorized by the defendant city's charter and that, accordingly, the circuit court should hold the tax void. The circuit court granted the city's motion for accelerated judgment and denied the plaintiff's motion for rehearing. Plaintiff appeals as of right from the order granting the accelerated judgment and from the denial of its motion for rehearing. Defendant appeals by leave granted from the order setting aside the summary judgment granted to it. The appeals were consolidated by the Court of Appeals. *Held:*

1. The new business license fee involved herein is an excise tax rather than a property tax. Although the fee is measured in most part by the value of personal business property, the nature of the tax the city imposes is that of a revenue raising excise or privilege tax. Therefore, the trial court erred in finding the transient trader or new business license fee to be a property tax and in granting the defendant's motion for an accelerated judgment.

2. The circuit court has jurisdiction to determine questions regarding the validity of excise taxes imposed by Ann Arbor.

3. A home rule city, such as Ann Arbor, may empower itself to impose excise taxes. However, such a city may decline to empower itself with such permissive authority. Such is the case here. The Ann Arbor home rule city charter does not include the permissive power to impose excise taxes. The city expressly intended to restrict its authority to impose excise taxes as evidenced by a review of the city's charter and the history of the drafting of the charter.

4. The authority to impose the tax at issue cannot be construed as retained authority pursuant to the saving clause of the home rule cities act. Because the Ann Arbor voters adopted a home rule charter expressly precluding license fees or excise taxes under its powers to tax, the adoption of the home rule charter in 1956 acted to repeal the transient trader ordinance at issue here since the city no longer had the authority to impose such a tax. A change in a charter depriving a municipality of previously existing power to enact an ordinance effects a repeal of such an ordinance.

5. Chapter 80, Title VII, §§ 7:75-7:79 of the Ann Arbor Ordinance Code are void.

The order of accelerated judgment is reversed and the case remanded for entry of an order consistent with the opinion.

1. TAXATION — EXCISE TAXES.

   An excise tax is a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege.

2. TAXATION — EXCISE TAXES — MUNICIPAL CORPORATIONS.

   A tax may be found to be an excise tax although the tax fee is measured in most part by the value of personal business property and is imposed in a sense in lieu of property taxes where the ordinance establishing such a tax prohibits the privilege of operating as a new business in the taxing municipality until the business pays the tax license fee.

3. TAXATION — TAX TRIBUNAL — JURISDICTION — MUNICIPAL CORPORATIONS — EXCISE TAXES.

   The Tax Tribunal has exclusive jurisdiction to review a city's decisions relating to assessment, valuation, rates, special assessments, allocation, or equalization under property tax laws, and for a refund under the property tax laws; circuit courts have the jurisdiction to determine questions regarding the validity of excise taxes imposed by a municipality (MCL 205.731, subds [a], [b]).

4. TAXATION — MUNICIPAL CORPORATIONS.

   Local units of government may impose only those taxes which are expressly authorized by state statute.

5. MUNICIPAL CORPORATIONS — HOME RULE CITIES — TAXATION — CITY CHARTERS.

   The home rule cities act mandates that a home rule city charter include provisions: (1) limiting the subjects of municipal taxation to those recognized under general law, (2) stating tax limitations, (3) for an annual appropriation of money for municipal purposes, and (4) outlining a procedure for the levy and collection of taxes in conformity with general laws, or in other words, general property taxes (MCL 117.3, subds [f], [g], [h], and [i]; MSA 5.2073, subds [f], [g], [h], and [i]).

6. MUNICIPAL CORPORATIONS — HOME RULE CITIES — TAXATION — CITY CHARTERS.

   The home rule cities act permits a home rule city charter to provide for laying and collecting rents, tolls, and excises if it desires; a home rule city may decline to empower itself with such permissive authority (MCL 117.4i[1]; MSA 5.2082[1]).

7. MUNICIPAL CORPORATIONS — HOME RULE CITIES — RETAINED AUTHORITY — TAXATION — EXCISE TAXES.

   The saving clause of the home rule cities act to the effect that

each city now existing shall continue with all its present rights and powers until otherwise provided by law cannot be construed to provide a home rule city the retained authority to enact an ordinance expanding on its power to impose a transient license fee or excise tax which existed pursuant to authority granted in a special city charter prior to the adoption of the city's home rule charter where such home rule charter expressly precluded the power to impose such license fees or excise taxes (MCL 117.2; MSA 5.2072).

8. MUNICIPAL CORPORATIONS — CITY CHARTERS — ORDINANCES.
   A change in the charter of a municipality which change deprives the municipality of the previously existing power to enact an ordinance effects a repeal of an ordinance enacted by the municipality pursuant to those powers.

9. CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS — HOME RULE CITIES — JUDICIAL CONSTRUCTION.
   The powers of home rule cities must be liberally construed (Const 1963, art 7, § 34).

*Arthur E. Carpenter,* for plaintiff.

*Mel Laracey,* Assistant City Attorney, for defendant.

Before: HOOD, P.J., and R. B. BURNS and R. M. SHUSTER,* JJ.

HOOD, P.J. Plaintiff appeals as of right from an order granting defendant's motion for accelerated judgment and a subsequent denial of its motion for rehearing. Defendant appeals by leave granted from an order setting aside a grant of summary judgment to it.

The Market Place, a delicatessen, commenced business in Ann Arbor in September, 1980. In April, 1981, the city sent the Market Place a bill for $164 as a license fee imposed pursuant to Chapter 80 of Title VII of the city's ordinance

---

* Circuit judge, sitting on the Court of Appeals by assignment.

code. The ordinance mandates that, in order to engage in business, all new businesses in the city must pay a fee equal to the tax rate that would be assessed on that business's personal property for ad valorem taxes, but pro rated for the months prior to December 31, or tax day.[1]

---

[1] "Ordinance

"Chapter 80 of Title VII

Code of the City of Ann Arbor

"New Businesses and Transient Traders

"7:75. Definitions. The terms 'New Business' or 'Transient Trader' shall mean every person who occupies all or part of a building within the City in connection with a business for profit or for the purpose of manufacturing or conducting research and/or development or offering for sale goods or performing services, provided, however, that this definition shall not be construed to include non-profit charitable, educational, scientific or religious organizations.

"Any person who engages in the selling of goods on private property only on those Saturdays when football games are played in the stadium of the University of Michigan shall not be deemed to be engaged in business for the purposes of Chapter 55 (Zoning) of this Code.

"7:76. License Required. No person shall start a new business or engage in business as a transient trader in the City of Ann Arbor without first obtaining a license therefor.

"7:77. Fee Required. Every new business and transient trader shall, at the time of the establishment of his business and at the time of occupying an additional separate place of business in the City, pay a fee equivalent to the tax rate imposed upon real and personal property in said City during the immediate preceding calendar year multiplied by fifty (50%) per cent of the value of all the furniture, fixtures, signs, leasehold improvements, and equipment on hand, when said business is established, this product in turn to be multiplied by that fraction of the year remaining between the date of establishment of the business and the end of the year. The minimum license fee shall be twenty-five ($25.00) dollars in total and the maximum fee shall be seventy-five ($75.00) dollars per day multiplied by the number of days remaining in the year from the opening day of business.

"7:78. Information Required. On forms supplied by the City, the license applicant shall submit the following information: The names and addresses of its owners, officers, partners, directors, and trustees; the names the business will use; the places where such names are registered; the nature of any franchises under which he will operate; the names and addresses of owners of any leased equipment in use in the business; and the value of the property referred to in section 7:77 of this Chapter.

The Market Place paid the $164 fee and subsequently filed this action challenging the city's authority to impose the fee. The Market Place requested a refund and sought class certification for "all persons broadly defined, who have paid a levy under Chapter 80 of Title VII within six years prior to the filing of this action".

Both parties filed motions for summary judgment. The Market Place argued that the city had no authority under its generalized police or regulatory powers to impose the fee because the fee was actually a tax unrelated to any regulatory costs. Defendant admitted that the city imposed the fee as a revenue-raising device, but argued that the city had the authority to do so.

The trial court found that the license fee was indeed a tax but that the city had the authority to impose that tax for two reasons. First, the court found that the city had the authority to impose taxes on business property pursuant to § 9.1 of the Ann Arbor City Charter. That section of the charter grants the city the authority to assess and impose ad valorem taxes on real and personal property.

Second, the trial court found that the city had the authority to impose the tax as a "holdover" power under authority existing prior to the city's adoption of its home rule charter in 1956. The court relied upon § 2 of the home rule cities act, the "saving" clause: "Each city now existing shall continue with all its present rights and powers until otherwise provided by law." MCL 117.2; MSA 5.2072. The court found that prior to 1956 Ann Arbor was a fourth class city.

"7:79. Issuance of License. When the applicant has paid the fee and provided the information required by this Chapter he shall be deemed licensed under this Chapter. Said license shall not permit any person to engage in an activity otherwise prohibited by this Code."

The fourth class cities act provides:

"Every city incorporated under the provisions of this act, shall, in addition to such other powers as are herein conferred, have the general powers and authority in this chapter mentioned; and the council may pass such ordinances in relation thereto, and for the exercise of the same, as they may deem proper, namely:

\* \* \*

"Thirty-ninth, The council may also license transient traders which shall be held to include all persons who may engage in the business of selling goods or merchandise after the commencement of the fiscal year and the license fee in such cases may be apportioned with relation to the part of the fiscal year which has expired, but such traders, if they continue in the same business, shall not be required to take out a second license after the commencement of the next fiscal year: *Provided,* Such goods or merchandise have been assessed for taxes for said fiscal year \* \* \*." MCL 91.1; MSA 5.1740.

The trial court agreed with defendant's argument that, pursuant to the fourth class cities enabling legislation above, Ann Arbor could and did adopt the authority to license transient traders and exact a fee from them in its pre-home rule city charter.[2] Because the trial court found that

---

[2] Ann Arbor's 1952 City Charter granted the city the authority:

"To regulate sextons and undertakers for burying the dead, cartmen and their carts, hackney carriages and their drivers, omnibuses and their drivers, scavengers porters and chimney sweeps, and their fees and compensation and to make regulations for preventing auctions, peddling, pawnbrokerage, or using for hire carts, drays, cabs, hacks or any kind of carriage or vehicle, or opening or keeping any tavern, hotel, victualing house, saloon or other houses or places for furnishing meals, food or drink, or billiard tables or ball alleys, without first obtaining from the common council license therefore; for licensing and regulating carts, drays, cabs, hacks and all carriages or vehicles kept or used for hire; for licensing and regulating auctioneers, peddlers, pawnbrokers, junk dealers, dealers in second-hand goods and merchandise, and transient tradesmen, auctions, peddling, pawnbrokerage, taverns, hotels, victualing houses, restaurants, saloons, or other houses for furnishing meals, food or drink, and keepers

the city's exaction of a new business license fee was a valid exercise of its municipal power, the court granted summary judgment to defendant. GCR 1963, 117.2(1).

The Market Place moved for reconsideration. The trial court did reconsider the motion for summary judgment and subsequently issued an order setting aside the summary judgment granted to defendant. The trial court agreed with plaintiff's argument that Ann Arbor had never been a fourth class city. Thus, the city never had the authority to tax transient traders under the fourth class cities act. Without such authority prior to the city's adoption of its home rule charter, the city could not retain any such authority under MCL 117.2; MSA 5.2072.

The trial court continued:

"This point, however, is not as significant as it might appear since Ann Arbor is clearly a home rule city, and, as such, may levy taxes on property. MCL 117.3(g); MSA 5.2073(g). What is significant is that plaintiff has brought to the court's attention the possibility that this license fee has not been administered in accordance with chapter 9 (the taxation provision) of the city charter. This point is crucial because though home rule cities as a class *may* have all the powers granted to them by the state (but in any case, no more than those granted by the state), as individual cities their powers are limited by their respective charters. If this license fee is to stand on the Ann Arbor's taxing power, it must be exercised in accordance with the taxation provisions of the city charter.

"The city's assertion that authority to tax may be found under chapter 3 of the city charter is untenable.

of billiard tables and ball alleys not used for gaming. Whoever occupies any premises within the city of Ann Arbor, for a temporary period only, and is not assessed for taxes in said city, and who offers for sale goods, wares, or merchandise, is hereby defined and declared to be a transient tradesman."

That provision refers to powers exercised for the benefit of the "public welfare", "health", "morals", etc. These words are classic elements of the police power. To find a general authority to levy taxes in chapter 3 would be to expand the city's taxing authority to the fullest extent permitted by state law. The structure of the charter indicates that this was not the community's intention.

"If plaintiff can establish that the administration of the ordinance in question cannot be squared with the city's taxing authority under the charter, the ordinance cannot be sustained as a tax. If the amount exacted by the ordinance does not approximate the cost of regulating new businesses, it cannot be sustained as an exercise of the police power. Plaintiff must refute both potential sources of authority at trial to be successful." (Emphasis in original.)

Ann Arbor moved for reconsideration of the order setting aside the summary judgment. The trial court denied the motion. The city then filed a motion for accelerated judgment, GCR 1963, 116.1(2), arguing that the trial court implicitly found the license fee to be a property tax and that because plaintiff's complaint sought a refund of this property tax the Tax Tribunal, not the circuit court, had exclusive jurisdiction over the action, MCL 205.731(b); MSA 7.650(31)(b).

The Market Place argued in reply that the license fee was not a property tax but an excise tax and, therefore, an *ultra vires* exercise of defendant's authority inasmuch as the Ann Arbor Charter Commission did not include the authority to impose excise taxes in the 1956 Charter. Accordingly, argued plaintiff, the circuit court should hold the tax void.

The circuit court granted the city's motion for accelerated judgment and denied plaintiff's motion for rehearing.

The issues we must address in this appeal are:

(1) what is the nature of the transient trader or new business license fee, a property, or excise tax? and (2) does the city have the authority to impose the tax?

# I

In *Dooley v Detroit*, 370 Mich 194; 121 NW2d 724 (1963), the Court was asked to determine whether Detroit's city income tax was a property or excise tax. The Court stated, pp 205-206:

"Excises have been variously defined, sometimes in very general language and sometimes in language more specific. In 51 Am Jur, Taxation, § 24, it is said that:

" 'Taxes fall naturally into 3 classes, namely, capitation or poll taxes, taxes on property, and excises. In general, it may be said that all taxes fall into one or the other of the foregoing classes, any exaction which is clearly not a poll tax or a property tax being an excise.'

"And at section 33, it is said:

" 'In its modern sense an excise tax is any tax which does not fall within the classification of a poll tax or a property tax, and embraces every form of burden not laid directly upon persons or property. The affirmative definitions of excise or excise tax found in the later decisions exhibit some variety in phraseology.'

"See, also, 16 McQuillin, Municipal Corporations (3d ed), § 44.190.

"Our own decisions offer some assistance. For instance, in a line of decisions determining the nature of our corporate franchise tax, beginning with *Union Steam Pump Sales Co v Secretary of State*, 216 Mich 261; 185 NW 353 (1921), and including *In re Truscon Steel Co*, 246 Mich 174; 224 NW 653 (1929); *In re Detroit Properties Corp*, 254 Mich 523; 236 NW 850 (1931); *Udylite Corp v Corporation & Securities Comm*, 319 Mich 1; 29 NW2d 132 (1947), and *Chicago, Duluth & Georgian Bay Transit Co v Corporation & Securities Comm*, 319 Mich 14; 29 NW2d 303 (1947), we held that the corporate franchise tax was an excise tax on the

franchise to do business as a corporation within the State. In support, we relied, first in *Union Steam Pump* (p 264) and in the other cases cited, upon the broad definition of an excise, which we accepted, found in 26 RCL, Taxation, § 209, at p 236:

" 'An excise is a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege.' " (Footnote omitted.)

While we agree with the city and the trial court that the tax in question here is, in part, measured upon the value of business property and is imposed in a sense in lieu of property taxes, we find the new business license fee to be an excise tax within the meaning of *Dooley, supra,* rather than a property tax. We find support in cases from this and other jurisdictions.

In *Continental Motors Corp v Muskegon Twp,* 376 Mich 170; 135 NW2d 908 (1965), the Court determined the validity of a state law imposing a tax on a business possessing interest in property otherwise exempt from property taxes. The tax was measured by the value of the property in a manner similar to ad valorem property taxes. The Court stated:

"While the legislature in imposing the new tax has utilized the language of ad valorem taxation, the tax nonetheless in its operation and practical effect is a tax upon the privilege of possession and use for profit of another's tax-exempt personal property and, therefore, it is an excise and not an ad valorem property tax." *Continental,* p 178.

Thus, the fact that a tax is measured by the value of property, like an ad valorem tax, does not mean that the tax is a property tax.

In *Storaasli v Minnesota,* 283 US 57; 51 S Ct 354; 75 L Ed 839 (1931), the Supreme Court deter-

mined that a state tax imposed upon motor vehicles using that state's highways was not a property tax although the tax was measured by the value of each automobile and was assessed in lieu of all other taxes on those vehicles. The Court placed particular importance on the statute's language denominating the fee as a privilege tax.

In *Ingels v Riley*, 5 Cal 2d 154; 53 P2d 939 (1936), the court was asked to determine the nature of a similar tax on motor vehicles, whether a property or excise tax. That court said:

"The distinction between a tax on a privilege and a property tax is many times a close one. Generally speaking, the function of a property tax is to raise revenue. Such a tax does not impose any condition nor does it place any restriction upon the use of the property taxed. A privilege tax, although also passed to raise revenue, and as such is to be distinguished from the license tax or regulatory charge imposed under the state's police powers, is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved. 37 Cor Jur, p 171, § 9, and cases cited.

"It is impossible to lay down any positive rule by means of which the character of any given tax may be ascertained. In each case the character of the given tax must be ascertained by its incidents, and from the natural and legal effect of the language employed in the statute. *Dawson v Kentucky Distilleries & Warehouse Co*, 255 US 288; 41 S Ct 272; 65 L Ed 638 (1921); *Matter of Application of Schuler*, 167 Cal 282; 139 P 685 (1914); Ann Cas 1915C, 706. * * *

"[W]e are of the opinion that the better rule is that the mode of ascertaining the amount of the tax is not conclusive. We are of the opinion that if a tax in its nature is a privilege tax, it does not become a property tax simply because it is proportioned in amount to the value of the property used in connection with the privilege which is taxed. *State of Maine v Grand Trunk R Co*, 142 US 217; 12 S Ct 121; 35 L Ed 994 (1891);

*Kane v State,* 81 NJL 594; 80 A 453 (1911); Ann Cas 1912D, 237; LRA 1917B, 555 *aff'd* 242 US 160; 37 S Ct 30; 61 L Ed 222 (1916)." *Ingels,* 5 Cal 2d 159-160; 53 P2d 941-942.

The ordinance plaintiff challenges in this case prohibits the privilege of operating as a new business in Ann Arbor until the business pays the license fee. Therefore, although the fee is measured in most part by the value of personal business property, the nature of the tax Ann Arbor imposes is that of a revenue raising excise or privilege tax.

Aside from the language of the ordinance itself, there are other indices that this license fee is not a property tax. First, the fee is assessed only in part by the value of personal business property. There is also a minimum and maximum amount levied. Second, the city does not treat the taxes raised pursuant to the new business ordinance in the same manner as ad valorem property taxes. The city disburses most of the ad valorem property tax revenues it collects to the county and school district(s) according to state law. However, the city deposits the new business license fees it collects directly into the city's general fund without any such disbursement. Third, the transient trader or new business tax is not computed on the value of any real property a new business may have on hand when the busines starts up. Thus, the amount of value taxed is not as comprehensive as an ad valorem property tax.

We conclude that the trial court erred by finding the transient trader or new business license fee to be a property tax rather than an excise tax. We find the fee to be an excise tax because it is primarily imposed on the privilege of operating a new business in Ann Arbor. Therefore, the trial

court erred by granting the city's motion for accelerated judgment. While the Tax Tribunal does have exclusive jurisdiction to review Ann Arbor's decisions relating to assessment, valuation, rates, special assessments, allocation, or equalization under property tax laws, MCL 205.731(a); MSA 7.650(31)(a), and for a refund under the property tax laws, MCL 205.731(b); MSA 7.650(31)(b), the circuit court retains jurisdiction to determine questions regarding the validity of excise taxes imposed by Ann Arbor.

## II

The next question with which we are presented is whether Ann Arbor has the authority to impose the new business or transient trader license fee as an excise tax.

Local units of government may impose only those taxes expressly authorized by state statute. *Berkley v Royal Oak Twp,* 320 Mich 597, 601; 31 NW2d 825 (1948). The home rule cities act mandates that a home rule city charter include: (1) a provision limiting the subjects of municipal taxation to those recognized under general law, MCL 117.3(f); MSA 5.2073(f); (2) a provision stating tax limitations, MCL 117.3(g); MSA 5.2073(g); (3) a provision for an annual appropriation of money for municipal purposes, MCL 117.3(h); MSA 5.2073(h); and (4) a provision outlining a procedure for the levy and collection of taxes in conformity with general laws, or in other words, general property taxes, MCL 117.3(i); MSA 5.2073(i).

The home rule cities act also *permits* a home rule city charter to provide, "For laying and collecting rents, tolls and excises", MCL 117.4i(1); MSA 5.2082(1), if it desires. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 66 fn 14; 214 NW2d

803 (1974). Thus, a home rule city may empower itself to impose excise taxes. However, a city may also decline to empower itself with such permissive authority. Such is the case here.

The Ann Arbor home rule city charter does not include the permissive power to impose excise taxes. We presume that the city intended to restrict its authority in this respect for two reasons. First, our review of the Ann Arbor charter shows that it provides for all of the statutorily permitted powers enumerated in the subsection of the home rule cities act except that for the laying of rents, tolls, or excises. Second, as the Market Place correctly argues, the history of the drafting of Ann Arbor's charter proves that the permissive authority to impose excise taxes was expressly excluded. The first three drafts of the proposed home rule charter provided:

"Power to Tax: Section 9.1. In order to carry out its purposes, powers, and duties, the City may assess, levy, and collect ad valorem taxes upon real and personal property and specific taxes, rents, tolls, excises, and license fees. Such specific taxes, tolls, excises, and license fees shall be uniform upon the classes upon which they operate."

At the charter commission's open meeting held January 21, 1955, the commission amended the draft by striking all authority to assess, levy, and collect specific taxes, rents, tolls, excises, and license fees. The Ann Arbor voters approved the final draft of the charter with the power to tax limited to taxation of real and personal property.

Despite this specific limitation of the powers to tax approved by the voters of Ann Arbor, the city argues that it nonetheless has the power to impose the transient traders' or new business license fee.

The city argues that the trial court correctly found in its original opinion granting the city's motion for summary judgment that the city retained the authority to impose this license fee pursuant to § 2 of the home rule cities act, MCL 117.2; MSA 5.2072. We disagree. Even if some such authority did carry over under Ann Arbor's home rule charter, that authority would not include the power to impose fees on businesses such as the Market Place.

As noted earlier in this opinion, the special charter that Ann Arbor adopted prior to its home rule city charter did authorize the city to license and regulate transient traders and other assorted merchants. The special charter defined transient traders as those persons occupying Ann Arbor property for a temporary period only and who were not assessed for property taxes. The ordinance the city passed pursuant to this authority was similar to the ordinance plaintiff challenges in this action.[3] However, that prior ordinance re-

---

[3] The predecessor ordinance to Chapter 80 of Title VII, § 7:77, of the city's ordinance code stated, in part:

"ORDINANCE No. 93

"AN ORDINANCE RELATIVE TO TRANSIENT TRADERS.

"The Common Council of the City of Ann Arbor ordain:

* * *

"93.2 Section 2. A transient Trader as used in this ordinance shall be construed to mean every person, firm or corporation which obtains and occupies premises within the City of Ann Arbor, and is not assessed for taxes in the City, and which offers goods, wares and merchandise for sale. Hereafter every person, firm or corporation which opens, establishes or starts a business in the City of Ann Arbor, wherein goods, wares and merchandise are offered for sale shall be deemed a transient trader until such person, firm or corporation shall be assessed and shall pay taxes to said City.

* * *

"93.3 Section 3. Before any license shall be granted under this ordinance, the person or persons, firm or corporation desiring the same shall make application of the common council in writing speci-

quired transient traders to pay a fixed daily fee; the fee was not measured on the value of their business property or goods.[4] Moreover, the ordinance permitted a new business within Ann Arbor to deposit a bond in an amount equal to the tax rate on the assessed value of its business property, both real and personal, for the immediately pre-ceeding property tax year. In the event that the business remained established in Ann Arbor and the city placed that business property on the regular tax rolls, the bond was refunded. If the business folded or left Ann Arbor and, thus, escaped placement on the tax rolls, the business forfeited the bond to the city's general fund.[5]

fying the kind of business the applicant proposes to engage in, the time it is to be carried on, and the place where such goods are to be sold, and shall at the time of making such application deposit with the City Clerk of said city the amount of the license fee required by this ordinance."

[4] "93.4 Section 4. The license fee required by this ordinance shall be as follows:

"For the right and privilege of selling goods at retail by sample, $5.00 per day for the first ten days, and $3.00 per day for each and every day in addition thereto.

"For the right and privilege of selling goods from a stock actually kept on hand from which selections are made by the purchaser, $7.00 per day for the first twenty days, and $5.00 for each and every day in addition thereto."

[5] "93.6 Section 6. Every transient trader in lieu of paying the license fees hereinabove provided, may deposit with the City Clerk a cash bond of a minimum amount equivalent to the tax rate per thousand assessed valuation, imposed upon real and personal property in said City during the immediate preceding calendar year, and such additional amount of cash bond at such tax rate as shall be equivalent to the value of all the stock of merchandise, furniture and equipment on hand, when said business is established as shall exceed the sum of $1,000.00. The sum so paid by such transient trader may be remitted by order of the City Council when and if it is shown that the stock of goods, wares and merchandise and equipment used and/or owned in said business by said transient trader has become subject to assessment and has been duly assessed by the City Assessor of the City of Ann Arbor, and the taxes have been paid thereon for a period of one year. In the event that such transient trader shall fail to continue in business for a sufficient length of time that said goods, wares and merchandise used, owned and controlled by said trader have not become subject to assessment and have not been assessesed

We read the special charter authority and ordinance promulgated under it as limiting the city's authority to impose license fees on transient businesses only. The city council passed a transient trader ordinance imposing a fee on new businesses that intended to remain in Ann Arbor only *after* the city adopted a charter expressly precluding the power to impose such license fees or excise taxes. This expansion on the authority to tax businesses cannot be construed as "retained" authority pursuant to MCL 117.2; MSA 5.2072.

Moreover, "a change in a charter depriving a municipality of previously existing power to enact an ordinance has been held to effect a repeal of the ordinance". 6 MacQuillan, Municipal Corporations, § 21.26. See also *People v Brill,* 120 Mich 42; 78 NW 1013 (1899). Because the Ann Arbor voters adopted a home rule charter expressly precluding license fees or excise taxes under the city's powers to tax, and because the adoption in 1956 of the home rule charter acted to repeal the transient trader ordinance at issue in this case, the city no longer had the authority to impose such tax.

We address the remainder of the city's argument summarily. There is no doubt that the Michigan Constitution and state statutes permit a municipality to impose excise taxes of this nature. However the home rule cities act permits a home rule charter city to accept or reject this authority. Ann Arbor rejected the authority and may not now argue that the state laws should be read into its charter. Therefore, the city's reliance on *Amberg v Welsh,* 325 Mich 285; 38 NW2d 304 (1949),

by the City Assessor of the City of Ann Arbor, and the taxes thereon have not been paid for a period of one year, then the cash bond so deposited shall, by order of the Common Council, be declared forfeited to the City of Ann Arbor to cover such license fee and shall be deposited in the general funds of the City of Ann Arbor."

and *Geftos v Lincoln Park,* 39 Mich App 644; 198 NW2d 169 (1972), is misplaced. We also disagree with the city's contention that its general power in Chapter 3 of its home rule charter authorizes the new business license fees. While we agree that the powers of home rule cities must be liberally construed, Const 1963, art 7, § 34; *1426 Woodward Avenue Corp v Wolff,* 312 Mich 352; 20 NW2d 217 (1945), the rejection by the Charter Commission and Ann Arbor voters of the city's power to impose license fees or excise taxes precludes any construction at all in this case. Certainly, had Ann Arbor adopted the power to impose excise taxes we would broadly construe that term generically to include the license fee at issue here. See *Dooley, supra.*

In conclusion, we find that the trial court erred by finding Ann Arbor's new business transient trader ordinance a valid exercise of the city's power to impose property taxes. Rather, the tax at issue in this case is an excise tax which the city does not have the authority to impose. Thus, Chapter 80, Title VII, §§ 7:75 to 7:79 are void.

The trial court's order of accelerated judgment is reversed and this cause is remanded for entry of an order consistent with this opinion.