Smolensk, P.J.
 

 Defendant Ann Arbor Charter Township appeals as of right from the trial court’s order granting plaintiff Rudolph Steiner School of Ann Arbor summary disposition and releasing plaintiff’s property from defendant township to allow annexation into defendant City of Ann Arbor. Plaintiff cross appeals. We reverse in part and affirm in part.
 
 [1]
 

 i
 

 Defendants are adjacent municipalities that executed a “Policy Statement Between City of Ann Arbor
 
 *724
 
 and Ann Arbor Charter Township” in 1994 to set forth an orderly procedure for annexations by defendant city. The policy statement provided in pertinent part as follows:
 

 PROMULGATION OF POLICIES
 

 The City of Ann Arbor, a Michigan municipal corporation, with its main office located at 100 N. Fifth Avenue, Ann Arbor, Michigan 48104 (hereinafter the “City”) and Ann Arbor Charter Township, a Michigan municipal corporation with its main office located at 3792 Pontiac Trail, Ann Arbor, Michigan 48105 (hereinafter the “Township”) hereby state that for the purpose of furthering the common welfare, they are promulgating policies set forth below and declare their intentions to abide by those policies in their exercise of their governmental authority insofar as it is practical and permitted by law. This agreement is intended to provide for orderly annexation procedures between the two governments and establish a common boundary between the communities so that each may systematically plan for provision of services to the area to be included within its boundaries.
 

 I. Common Boundary
 

 All land in the Township lying west of U.S. 23 and south of M-14 shall be annexed to the City in an orderly manner. That portion of the Township lying north of M-14, east of Maple Road and south of the Huron River, excluding therefrom the area located east of Maple Road, west of Newport Road, and south of the Huron River, as shown on the map attached as Exhibit A-l and as more specifically described in the legal description attached as Exhibit A-2, shall also be annexed to the City in an orderly manner. It is understood that this aforementioned boundary is unofficial until such time as it can be officially designated pursuant to the procedures required under applicable state law and regulations.
 

 The parties agree to the following policies:
 

 
 *725
 
 A. The City shall be the only municipality to provide sewer and water service to all areas within the area identified herein as areas to be annexed to the City.
 

 B. The City may initiate a petition for annexation of any Township property located within the area designated area A on the map attached as Exhibit B.
 

 C. The Township agrees to release any property in area A which is presently receiving or in the future requests a connection to City sewer or water mains.
 

 D. Any land in areas A through D as shown on the map attached as Exhibit B for which connection to Ann Arbor City water service is requested will be released by the Township at the request of the owner. The Township agrees that it will not object to such annexations or refuse to release the properties because of the requested connection to the City water supply.
 

 G. All properties located within areas B through D which request connection to Ann Arbor City sewer will be released by the Township forthwith upon the owner’s request for annexation to the City.
 

 ni. Existing Agreements
 

 Nothing in this boundary policy and agreement is intended to alter the terms of the existing agreements between Township residents and the City concerning annexation or the provision of water or sewer service by the City to those residents.
 

 IV. Petitions to State Boundary Commission
 

 The City agrees it will not initiate a petition to the State Boundary Commission to annex any owner occupied lands in areas B, C, or D before December 31, 2007. After that date, the Township will not oppose a petition by the City to annex properties in Areas B, C, or D or otherwise intervene on behalf of the owner.
 

 
 *726
 
 V. Pending Litigation
 

 The City and Township agree to take all necessary action to dismiss or otherwise conclude, in a manner consistent with this agreement, all pending litigation and State Boundary Commission proceedings involving annexation of Township land into the City.
 

 The factual record in this case is limited. Plaintiff owns twelve acres of property located in defendant township on which it operates a private elementary and junior high school, which receives municipal sewer and water service from defendant city. On or about February 2, 1996, plaintiff applied for a conditional use permit from defendant township regarding the property.
 
 [2]
 
 In a letter dated October 16, 1996, to defendant township’s supervisor, plaintiff stated that it was withdrawing its request to the township’s planning commission for approval of site development and advised defendant township of its intent to seek annexation into defendant city. Defendant township subsequently denied plaintiff’s request to release its property from defendant township for annexation into defendant city at a township meeting held on December 16, 1996. Then, some months later, on July 24, 1997, plaintiff filed the present declaratory action against defendants pursuant to MCR 2.605. In count I of its complaint, plaintiff asked the trial court to find that defendant township breached its duty to release plaintiff’s property for annexation under the terms of the “boundary agreement” and that plaintiff was a third-party beneficiary of that agreement.
 
 [3]
 
 In
 
 *727
 
 count n, plaintiff asked the court to find that defendants’ “boundary agreement” violated plaintiff’s equal protection rights under the Michigan Constitution.
 
 [4]
 

 Plaintiff continued to seek annexation into defendant city after filing the suit. In a letter to defendant township dated October 3, 1997, plaintiff requested release of its property because it had requested a new water meter line, an upgrade of its existing water meter, and a new sewer line from defendant city. Plaintiff stated that these new water and sewer service requests required defendant township to release its property pursuant to sections 1(D) and (G) of the policy statement. Plaintiff subsequently amended its complaint to allege that its property was entitled to be released from defendant township pursuant to section 1(D) of the policy statement, because the property was an “Area B” property that had requested water service from defendant city. Defendant township subsequently denied plaintiff’s request for release during its meeting on November 17, 1997.
 

 Plaintiff moved for summary disposition pursuant to MCR 2.116(C)(9) and (10), contending that there was no genuine issue of fact that it was a third-party beneficiary of the policy statement and that defendants breached the terms of the statement by denying plaintiff’s request for release from the township. Defendant township filed its own motion for summary disposition pursuant to MCR 2.116(C)(4), (8), and (10), contending that plaintiff failed to exhaust its administrative remedies by failing to file an action
 
 *728
 
 with the State Boundary Commission and that plaintiff was not a third-party beneficiary of the policy statement. At the hearing on the motions for summary disposition, defendant city’s attorney agreed with plaintiff that defendant township should release the property under the terms of the policy statement.
 
 [5]
 
 The trial court granted plaintiff’s motion for summary disposition, denied defendant township’s motion for summary disposition, and ordered the board of trustees of defendant township to release plaintiff’s property for annexation into defendant city. In reaching its decision, the court stated its belief that the policy statement was an agreement by which defendants delegated their decision regarding whether property was to be within the boundaries of the township or the city to the individual property owners.
 
 [6]
 
 The trial court further stated its belief that the only purpose served by the policies was to grant the property owners a choice with respect to where they wanted to locate their property, and that this conferred a benefit to establish a third-party beneficiary contract for the property owners.
 
 [7]
 

 
 *729
 
 The court clarified its order in its April 28, 1998, final judgment, which provided in pertinent part as follows:
 

 The Court directed the parties to appear to clarify the Court’s prior Order of Summary Disposition and to address any remaining issues. As stated on the record this date IT IS ORDERED AND ADJUDGED as follows:
 

 1. Plaintiff’s motion for summary disposition is granted to the extent that Defendant Township shall release Plaintiff’s property at 2775 Newport Road for annexation to the City of Ann Arbor.
 

 2. Plaintiff’s constitutional claims are thereby moot.
 

 3. Pursuant to MCR 2.116(I)(2), it appears that the Defendant is entitled to summary disposition of Plaintiff’s damage claims and the same are hereby dismissed.
 

 4. The City of Ann Arbor is no longer a necessary party to this litigation and is therefore dismissed from this action.
 

 n
 

 In its first issue on appeal, defendant township contends that the trial court lacked subject-matter jurisdiction and violated the principle of separation of powers when it ordered defendant township to release plaintiffs property for annexation to defend
 
 *730
 
 ant city without first requiring plaintiff to exhaust its administrative remedies before the State Boundary Commission. We agree. Defendant township’s claim presents an issue of first impression for this Court. Whether the trial court had subject-matter jurisdiction is a question of law that this Court reviews de novo.
 
 W A Foote Memorial Hosp v Dep’t of Public Health,
 
 210 Mich App 516, 522; 534 NW2d 206 (1995). Summary disposition pursuant to MCR 2.116(C)(4), for lack of jurisdiction, is proper when a plaintiff has failed to exhaust its administrative remedies.
 
 Blair v Checker Cab Co,
 
 219 Mich App 667, 671; 558 NW2d 439 (1996).
 

 MCL 123.1001
 
 et
 
 seq.; MSA 5.2242(1)
 
 et seq.
 
 (the boundary commission act) created the State Boundary Commission in 1968 and granted the commission authority over annexations in 1970.
 
 Shelby Charter Twp v State Boundary Comm,
 
 425 Mich 50, 58; 387 NW2d 792 (1986); 1970 PA 219; 1968 PA 191. Under the 1970 amendment of the boundary commission act giving the commission authority over annexations, MCL 117.9; MSA 5.2088 (§ 9 of the Home Rule Cities Act) became the exclusive means of annexing territory from a township to a home rule city.
 
 Shelby Charter Twp, supra
 
 at 59. See MCL 117.9(11); MSA 5.2088(11), which provides that after March 31, 1971, and as long as the boundary commission act is in effect, “annexation of territory from a township or village to a home rule city shall be as provided in this section and no other means of annexation shall be effective.” Accordingly, MCL 117.9(2); MSA 5.2088(2) provides that a petition or resolution for annexation of territory shall be filed with the State Boundary Commission, which shall hold a public hearing after
 
 *731
 
 determining the validity of the petition or resolution. In turn, the boundary commission act provides that every final decision of the commission shall be subject to judicial review in a manner prescribed in 1952 PA 197, as superseded by the Administrative Procedures Act of 1969, 1969 PA 306, MCL 24.201
 
 et seq.;
 
 MSA 3.560(101)
 
 et seq. Midland Twp v State Boundary Comm,
 
 401 Mich 641, 670-674; 259 NW2d 326 (1977).
 

 While plaintiff correctly contends that an annexation proceeding before the State Boundary Commission is not a contested case, nonetheless the boundary commission act and § 9 of the Home Rule Cities Act set forth an administrative procedure for resolving annexation disputes, and the boundary commission act provides for judicial review of commission decisions. However, as our Supreme Court cautioned in
 
 Midland Twp, supra
 
 at 674, “the judiciary ought to be especially circumspect in reviewing commission rulings and determinations” because annexation proceedings do not involve a vested right or legally protected interest, but rather present what is essentially a political question. “[I]t is well settled that where an administrative grievance procedure is provided, exhaustion of that remedy is required before the circuit court can review the case.”
 
 Michigan Supervisors Union OPEIU Local 512 v Dep’t of Civil Service,
 
 209 Mich App 573, 576-577; 531 NW2d 790 (1995). Because the boundary commission act and § 9 of the Home Rule Cities Act set forth an administrative grievance procedure subject to judicial review, we conclude that plaintiff had to exhaust its administrative remedies under those acts before filing suit in the circuit court.
 

 
 *732
 
 We note that there are alternative methods for annexation that could exempt a landowner from filing a petition with the State Boundary Commission. However, none of these alternative methods apply to plaintiff in the present case. MCL 117.9(2); MSA 5.2088(2) lists two exceptions to the requirement that a petition or resolution for annexation of territory be filed with the State Boundary Commission. The first exception, MCL 117.9(1); MSA 5.2088(1), applies to state-owned property. However, this exception is irrelevant to the present case, which involves annexation of privately owned property. The second exception, set forth in MCL 117.9(8); MSA 5.2088(8), includes an alternative method of annexation for both city-owned and privately owned land:
 

 Where the territory proposed to be annexed to any city is adjacent to the city and consists of a park or vacant property located in a township and owned by the city annexing the same, and there is no one residing thereon, such territory may be annexed to the city solely by resolution of the city council of the city or in any case where the territory proposed to be annexed is adjacent to the city and consists of property owned by the city or consists of fractional parts of platted subdivision lots, located in an adjoining city, village, or township, such annexation may also be accomplished by the affirmative majority vote of the legislative body of such city and the approval of the legislative body of such adjoining city, village, or township. As an alternative method, where there are no qualified electors residing in the territory proposed to be annexed to the city, other than the person or persons petitioning, a petition signed by a person or persons, firms, corporations, the United States government, or the state or any of its subdivisions who collectively hold the equitable title as a vendee under a recorded land contract or memorandum of land contract, or record legal title to more than V2 of the area of the land in the territory to be annexed is filed with the city council of
 
 *733
 
 the city and with the township board of the township in which such territory is situated, such annexation may be accomplished by the affirmative majority vote of the city council of such city and the approval of the township board of such township. At least 10 days prior to the approval by the township board, the township treasurer shall notify, personally or by registered mail with return receipt demanded, the owners of all real property annexed as shown on the assessment rolls of the township at the last known address on file with the township treasurer.
 

 MCL 117.9(8); MSA 5.2088(8) sets forth three separate alternative methods for annexation. First, the statute authorizes a city to annex certain vacant land that the city owns by enacting a resolution for annexation and requires no affirmative action on the part of the township. Second, in any case where land is adjacent to the city and is owned by the city or consists of fractional parts of platted subdivision lots, annexation may be accomplished by the affirmative majority vote of the city council and the governing body of the adjoining city, village, or township. Third, this statute sets forth an alternative method for public or private landowners to annex land of which they own more than one-half of the area to be annexed and on which there are no residents. While these alternative methods for annexation exist, we find no evidence that plaintiff proceeded under any of these methods of annexation.
 

 In addition, any proposed annexation of property located within the boundaries of a charter township must comply with MCL 42.34; MSA 5.46(34) (§ 34 of the charter township act). See
 
 Shelby Charter Twp, supra
 
 at 61-62. This Court previously stated that § 34 of the charter township act did not repeal subsection 9(11) of the Home Rule Cities Act, but rather was “an
 
 *734
 
 act complete within itself, containing provisions regarding annexation of portions of charter townships to contiguous cities or villages.”
 
 Meridian Charter Twp v East Lansing,
 
 101 Mich App 805, 808; 300 NW2d 703 (1980). Under MCL 42.34(1); MSA 5.46(34)(1), charter townships meeting certain qualifications are exempt from annexation except as provided in MCL 42.34(2)<8); MSA 5.46(34)(2)-(8).
 
 [8]
 
 In
 
 *735
 
 reviewing these subsections, we conclude that the only method of annexation under § 34 of the charter township act that could arguably apply under the facts in the present case is a boundary adjustment resolution pursuant to MCL 42.34(8); MSA 5.46(34)(8). However, plaintiff does not contend that defendants proceeded under MCL 42.34(8); MSA 5.46(34)(8) and there is no evidence that defendants approved a common boundary resolution or conducted a public hearing as required by this subsection. Because plaintiff did not comply with any alternative method of annexation allowed by statute, we conclude that plaintiff had to seek annexation through the boundary commission as required by MCL 117.9; MSA 5.2088.
 

 
 *736
 
 We reject plaintiffs contention that it could circumvent the boundary commission and seek relief directly in the circuit court as third-party beneficiary of the policy statement.
 
 [9]
 
 Plaintiff fails to recognize the unique nature of annexation proceedings. “No city, village, township or person has any vested right or legally protected interest in the boundaries of such governmental units.”
 
 Midland Twp, supra
 
 at 664. See also
 
 Shelby Charter Twp, supra
 
 at 57. Changing the boundaries of political subdivisions is a legislative question.
 
 Oakman v Wayne Co Bd of Supervisors,
 
 185 Mich 359, 362; 152 NW 89 (1915). The Legislature is free to change city, village, and township boundaries at will.
 
 Midland Twp, supra
 
 at 664. In seeking guidance on this issue, we look to the following passage from
 
 Hunter v Pittsburgh,
 
 207 US 161, 178-179; 28 S Ct 40; 52 L Ed 151 (1907), which our Supreme Court quoted in
 
 Midland Twp, supra
 
 at 665-666:
 

 Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental
 
 *737
 
 powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States.
 
 Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers,
 
 and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it. [Emphasis added.]
 

 While the power to annex territory to municipalities has been delegated to boards of supervisors, other public bodies, or to the voters themselves through referendum, we find no support for the proposition that defendants could agree to delegate their powers regarding annexation to individual property owners. See
 
 Oakman, supra
 
 at 362-363.
 

 Contrary to both the trial court’s statements at the motion hearing and plaintiff’s contention on appeal, defendants’ policy statement was not a contract that the individual property owners could enforce as third-
 
 *738
 
 party beneficiaries. “One of the essential elements of a valid contract is that it be concerned with a valid subject matter.”
 
 Muflahi v Musaad,
 
 205 Mich App 352, 353; 522 NW2d 136 (1994). While the policy statement in the present case sets forth an understanding between defendants regarding the future annexation of property situated in defendant township, and an agreement to resolve pending litigation among themselves, neither defendant had a vested right or legal interest in maintaining their present governmental boundaries. As a result, defendants lacked the ability to enter into a valid contract to change those boundaries independent of the statutory scheme for annexation established by the Legislature. We need only look as far as the policy statement itself to ascertain that the parties recognized these restrictions on their ability to adjust boundaries. For example, they declared in the initial paragraph of the policy statement to abide by the policies “in their exercise of their governmental authority insofar as it is practical
 
 and permitted by
 
 law.” (Emphasis added.) Furthermore, in section I, the parties stated that the common boundary created by defendant city’s annexation of defendant township’s land lying west of US 23 and south of M-14 “is unofficial until such time as it can be officially designated pursuant to the procedures required under applicable state law and regulations.” As a third-party beneficiary, plaintiff would have only the same right to enforce a contract as would defendants, the promisees.
 
 Riemersma v Riemersma,
 
 29 Mich App 485, 487; 185 NW2d 556 (1971). However, under the facts in the present case, defendant township had no vested rights in its boundaries such that it could agree to release certain property
 
 *739
 
 for annexation into defendant city independent of the statutory scheme for annexation. As a result, there is no promise for plaintiff to enforce. “A third party may not enforce a promise if the underlying contract is infirm.”
 
 Koenig v South Haven,
 
 460 Mich 667, 684; _ NW2d _ (1999) (Weaver, J, concurring).
 
 [10]
 
 See generally MCL 600.1405; MSA 27A.1405.
 

 Because plaintiff failed to exhaust its administrative remedies with the boundary commission, the trial court lacked jurisdiction to entertain count I of plaintiffs amended complaint. As a result, any action with respect to that count, other than to dismiss it, was void.
 
 Todd v Dep’t of Corrections,
 
 232 Mich App 623, 632; 591 NW2d 375 (1998). Accordingly, we vacate all the trial court’s orders that relate to count I. Because this issue is dispositive of plaintiff’s claims with respect to count I, we find it unnecessary to address defendant township’s remaining issues on appeal.
 

 m
 

 We will now address plaintiff’s issues on cross appeal. First, plaintiff contends that the trial court erred in determining, sua sponte, that defendant township was not liable for the resulting money damages incurred by plaintiff related to its breach of the policy statement. However, this issue is moot because the trial court lacked subject-matter jurisdiction to entertain plaintiff’s count I.
 

 
 *740
 
 IV
 

 In its final issue on appeal, plaintiff contends that the trial court erred in dismissing plaintiff’s constitutional claims as moot. We agree with plaintiff that the trial court erred in finding plaintiff’s constitutional claim moot. Nonetheless, we conclude that the trial court reached the correct result when it dismissed count n because plaintiff failed to state a cause of action against defendant township for a so-called constitutional tort. While the trial court did not address the merits of this issue, plaintiff argues the merits of its claim on appeal. We will review this issue because it presents a question of law and all the facts necessary for resolution of the question are before the Court. See
 
 Westfield Cos v Grand Valley Health Plan,
 
 224 Mich App 385, 387; 568 NW2d 854 (1997).
 

 A cause of action exists for constitutional torts against the state and municipalities where the plaintiff alleges that a governmental agency violated a right conferred by the state constitution.
 
 Jones v Powell,
 
 227 Mich App 662, 668-675; 577 NW2d 130 (1998);
 
 Stamps v City of Taylor,
 
 218 Mich App 626, 635-636; 554 NW2d 603 (1996). Here, plaintiff alleged that defendant township committed a constitutional tort because it violated plaintiff’s right to equal protection of the laws by classifying plaintiff’s property for annexation on the basis of the date it applied for water service from defendant city. The Equal Protection Clause, Const 1963, art 1, § 2, provides in pertinent part that “[n]o person shall be denied the equal protection of the laws.” However, in order to establish an equal protection claim, a plaintiff must first demonstrate that a property or liberty interest has been taken away by the defendant’s conduct.
 
 Bender
 
 
 *741
 

 v City of St Ann,
 
 816 F Supp 1372, 1376 (ED Mo, 1993), aff’d 36 F3d 57 (CA 8, 1994). See also
 
 Roloff v Sullivan,
 
 772 F Supp 1083, 1095 (ND Ind, 1991), aff'd 975 F2d 333 (CA 7, 1992). In reviewing plaintiff’s constitutional tort claim, we must state, once again, that plaintiff had no vested rights, legally protected interests or “private rights” in the boundaries of either defendant city or defendant township.
 
 Midland Twp, supra
 
 at 664, 673. Because plaintiff had no legally protected interest in defendants’ boundaries, we conclude that it had no vested right or interest that could be affected by defendant township’s classification of its property for purposes of annexation, and, consequently, no basis to claim that defendant township violated its constitutional right to equal protection under the laws.
 

 Reversed in part and affirmed in part. No taxable costs pursuant to MCR 7.219, a question of public policy being involved.
 

 [1]
 

 The record before us does not indicate whether defendant city is a home rule city; however, we will treat defendant city as such for purposes of this opinion. Both plaintiff and defendant township intimate in their briefs that defendant city is a home rule city. Furthermore, we take judicial notice that defendant city adopted a home rule charter. See MRE 202(a), which provides in part, “A court may take judicial notice without request by a party of. . . ordinances and regulations of governmental subdivisions or agencies of Michigan.” See also
 
 Market Place v Ann Arbor,
 
 134 Mich App 567, 572; 351 NW2d 607 (1984) (noting that defendant city adopted its home rule charter in 1956).
 

 [2]
 

 The record does not include a complete copy of plaintiffs application.
 

 [3]
 

 Plaintiff refers to the 1994 policy statement between defendants as a “boundary agreement.” However, for purposes of this opinion, we will refer to the document as the policy statement.
 

 [4]
 

 Although plaintiff did not allege the constitutional provision that formed the basis for its cause of action in its complaint, plaintiff argues on appeal that it relied on the Equal Protection Clause, Const 1963, art 1, §2.
 

 [5]
 

 Sometime before the motion hearing on February 18, 1998, plaintiff filed a “Petition for annexation by release,” with defendant city. However, the copy of the petition in the record is undated, unsigned, and lacks attachments.
 

 [6]
 

 At the motion hearing on February 18, 1998, the trial court stated:
 

 Within those areas this Property Agreement decided to delegate its [sic] decision, if you will, as to whether to be in the city or the township to the property owners not to the city council or the township board, but to the property owners, and to allow the property owners to make that choice because none of those properties could be forced to stay in or stay out without the request of the property owners.
 

 [7]
 

 At the motion hearing on February 18, 1998, the trial court stated:
 

 
 *729
 
 I believe that the only purpose served by having these policies in that in between areas, if you will, was to confer that choice!,] that benefit of choice, if you will, upon the owners of the affected property.
 

 This has some political benefit, I’m sure, to both municipalities, in that they were not forcing property owners to go in or stay out but rather were leaving that choice to the individual property owners, and that I believe that the sections of this contract do that.
 

 They confer the benefit required to establish it as a third party beneficiary contract and each of them promised to abide by that for the benefit of [sic] in this area [sic] these property owners.
 

 [8]
 

 MCL 42.34(2)-(8); MSA 5.46(34)(2)-(8) allows annexation under the following circumstances:
 

 (2) Notwithstanding subsection (1), the state boundary commission may, under procedures initiated and conducted pursuant to section 9 of Act No. 279 of the Public Acts of 1909, being section 117.9 of the Michigan Compiled Laws, order a portion or portions of a charter township to be annexed as necessary to eliminate free standing islands of the township completely surrounded by an annexing city, or to straighten or align the exterior boundaries of the city or village in a manner that the charter township and city or village contain uniform straight boundaries wherever possible.
 

 (3) Notwithstanding subsection (1), a portion of a charter township which charter township is contiguous on all sides with a city or village may be annexed by that city or village with the approval of a majority of the electors in that portion of a charter township.
 

 (4) Notwithstanding subsection (1), if a qualified elector does not reside in the territory proposed to be annexed which is contiguous to the city or village, other than the 1 or more persons petitioning, or if a petition signed by 1 or more persons, firms, corporations, the United States government, or the state or any of its subdivisions which collectively hold the equitable title as vendee under a recorded land contract or memorandum of land contract, or recorded legal title to more than
 
 'k
 
 of the area of the land in the territory to be annexed is filed with the city or village and with the township board of the charter township in which the territory is situated, the annexation may be accomplished by the affirmative majority vote of the city council or village board of the city or village and the approval of the charter township board of the township.
 

 (5) Notwithstanding subsections (1) and (3), a portion of a charter township contiguous to a city or village may be annexed to that city or village upon the filing of a petition with the county clerk which petition is signed by 20% of the registered electors in the area to be annexed and approval by a majority of the qualified and registered electors voting on the question in the city or village to
 
 *735
 
 which the portion is to be annexed, and the portion of the township which is to be annexed, with the vote in each unit to be counted separately.
 

 (6) If a petition is filed pursuant to subsection (5), the county clerk, after determining the validity of the petition, shall order a referendum on the question of annexation. This referendum shall occur within 1 year after the validation of the petitions. The referendum shall be held at the first primary or general election held in that county not less than 60 days after the validation of the petition, or under section 639 of the Michigan election law, Act No. 116 of the Public Acts of 1964, as amended, being section 168.639 of the Michigan Compiled Laws.
 

 (7) A village having a population of 4,200 or more shall not be annexed to a contiguous unit of government unless a majority of the qualified and registered electors residing within the village vote in favor of the annexation at an election held pursuant to the Michigan election law, Act No. 116 of the Public Acts of 1954, as amended, being sections 168.1 to 168.992 of the Michigan Compiled Laws.
 

 (8) The common boundary of a charter township and a city or village may be adjusted by resolution approved by a majority of each of the respective governing bodies after the governing bodies give 90 days’ notice to property owners in the area proposed for the boundary adjustment, and the governing bodies conduct a public hearing on the proposed boundary adjustment.
 

 [9]
 

 In rejecting plaintiff’s contention, we note that plaintiff incorrectly relies on our opinion in
 
 Meridian Charter Twp, supra
 
 at 808, for the proposition that the circuit court has original jurisdiction of annexation disputes. In
 
 Meridian Charter Twp,
 
 the plaintiff did not institute annexation proceedings in the circuit court; rather, the plaintiff filed suit to block a township referendum for annexation held pursuant to MCL 42.34(5) and (6); MSA 5.46(34)(5) and (6) on the ground that the statutes were unconstitutional.
 
 Meridian Charter Twp, supra
 
 at 807.
 

 [10]
 

 Because we have determined that the alleged “contract” is infirm, we need not address the issue whether plaintiff was an intended third-party beneficiary of the contract.