# STATE OF MICHIGAN

# COURT OF APPEALS

EARL D. BOOTH,

      Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS and
ANGELA D. GEIGER,

      Defendants-Appellees.

UNPUBLISHED
July 31, 2018

No. 339779
Court of Claims
LC No. 17-000162-MZ

Before: RONAYNE KRAUSE, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Plaintiff, Earl D. Booth, filed this civil suit against defendants, the Michigan Department of Corrections (the DOC) and Angela D. Geiger, a DOC employee, alleging a breach of contract claim against the DOC only (Count I), a declaratory judgment claim against both defendants (Count II), and a claim for violation of the Bullard-Plawecki Employee Right to Know Act (ERKA), MCL 423.501 *et seq*., against both defendants (Count III). Plaintiff is a prison guard who seeks access to a report from the DOC's Allegations, Investigations, Personnel Action System (AIPAS). Plaintiff asserts that the report involves him, and the DOC asserts that the document is both protected from public disclosure and not considered part of his personnel file. The trial court granted defendants' motion for summary disposition, which defendants filed in lieu of an answer, ruling that (1) plaintiff's breach of contract claim was barred for failure to exhaust administrative remedies, (2) the Court of Claims had subject-matter jurisdiction to consider an ERKA claim, and (3) the record plaintiff sought was exempt from disclosure under the ERKA. Plaintiff appeals as of right. We affirm in part, reverse in part, and remand.

Prior to the instant lawsuit, plaintiff filed a lawsuit against the DOC under the Freedom of Information Act (FOIA), MCL 14.231 *et seq*., seeking various records, including the AIPAS report in question in this case. This Court has twice considered plaintiff's appeals in the FOIA case. *Booth v Dep't of Corrections*, unpublished per curiam opinion of the Court of Appeals, issued June 9, 2015 (Docket No. 324319) (*Booth I*); *Booth v Dep't of Corrections*, unpublished per curiam opinion of the Court of Appeals, issued December 1, 2016 (Docket Nos. 331807 and 332014) (*Booth II*).

In addition to his FOIA dispute with the DOC, plaintiff also pursued his potential rights and remedies under the collective bargaining agreement (CBA) between the DOC and the

-1-

Michigan Corrections Organization SEIU Local 526M, CTW (MCO SEIU). Plaintiff sought to exercise his contractual right to review his personnel file and obtain copies of its contents. On April 13, 2017, plaintiff sent an e-mail to Geiger, requesting a copy of AIPAS Report #9010, which plaintiff described as "a Report in my Personnel File." Geiger responded to plaintiff's request by e-mail, advising him that he could review his personnel file if he scheduled an appointment with his human resources liaison. However, Geiger also advised plaintiff of the DOC's position that AIPAS reports are not part of the personnel file and that plaintiff would not be provided with a copy of the AIPAS report in question. Plaintiff filed the present suit in the Court of Claims, alleging the counts described above. The trial court granted defendants' motion for summary disposition for the reasons described above. Plaintiff now appeals.

We initially address plaintiff's claim that the Court of Claims erred when it determined that it had subject-matter jurisdiction over plaintiff's ERKA claim. In his complaint, plaintiff requested that the Court of Claims determine whether it had subject-matter jurisdiction. A party cannot contend on appeal that its own conduct or request was error warranting reversal. *Smith v Musgrove*, 372 Mich 329, 337; 125 NW2d 869 (1964). All courts are obligated to determine whether they have subject-matter jurisdiction if the issue is questioned, or even to raise the issue sua sponte. *O'Connell v Director of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016). There is no basis for plaintiff to assert that the Court of Claims erred by addressing whether it had subject-matter jurisdiction. Nevertheless, plaintiff is not precluded from challenging whether the Court of Claims's determination was correct. We review de novo as a question of law whether the Court of Claims has subject-matter jurisdiction in any given matter. *Id.* at 97.

Subject-matter jurisdiction is the right of the court to exercise judicial power over a class of cases. *Bowie v Arder*, 441 Mich 23, 39; 490 NW2d 568 (1992). As a general matter, a circuit court in Michigan has subject-matter jurisdiction in all civil matters unless exclusive jurisdiction over all matters in a complaint have not been specifically precluded or conferred on some other court by our Legislature or our Constitution. See *O'Connell*, 316 Mich App at 101. In contrast, the "Court of Claims is created by statute and the scope of its subject-matter jurisdiction is explicit." *Dunbar v Dep't of Mental Health*, 197 Mich App 1, 5; 495 NW2d 152 (1992). Plaintiff correctly observes that MCL 423.511 specifically provides that actions under the ERKA may be brought in the circuit court. Plaintiff also correctly observes that as a general matter, when there is a conflict between statutes that are in para materia, "the more recent and more specific statute controls over the older and more general statute." *O'Connell*, 316 Mich App at 99 (quotation omitted). We find that MCL 423.511 is neither more recent nor more specific.

MCL 423.511 was enacted by 397 PA 1978, effective January 1, 1979, and that statute has never been amended. The current version of MCL 600.6419 was enacted by 2013 PA 164, effective November 12, 2013. The current version of MCL 600.6419(1)(a) provides that the Court of Claims has exclusive jurisdiction over *any* statutory claim against the state or its departments, and that the jurisdiction of the Court of Claims is "notwithstanding another law that confers jurisdiction of the case in the circuit court." Reading MCL 423.511 and MCL 600.6419(1) in pari materia, we conclude that the Court of Claims Act is the more recent and more specific statute with regard to statutory claims against the state or its departments and officers. Therefore, the statement of jurisdiction in the Court of Claims Act is the controlling and overriding authority. See *O'Connell*, 316 Mich App at 99.

Under MCL 600.6419(1)(a), the Court of Claims has exclusive jurisdiction to hear any statutory claim against the state or any of its departments. In this case, plaintiff has stated claims against the DOC, a department of the state of Michigan. Plaintiff alleges that the DOC violated the ERKA, which is a statutory cause of action. We therefore conclude that the Court of Claims had subject-matter jurisdiction to hear and decide his case pursuant to MCL 600.6419(1)(a). The trial court was correct as a matter of law in ruling that it had subject-matter jurisdiction over plaintiff's ERKA claim against these defendants.

Substantively, plaintiff first argues that the trial court erred by granting summary disposition of his breach of contract claim against the DOC on the ground that plaintiff failed to exhaust his administrative remedies under the CBA. We disagree.

"We review a trial court's decision with regard to a motion for summary disposition de novo as a question of law." *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). This grant of summary disposition was pursuant to MCR 2.116(C)(4), for a lack of subject-matter jurisdiction. *Manning v Amerman*, 229 Mich App 608, 610; 582 NW2d 539 (1998). This issue is distinct from whether the Court of Claims has subject-matter jurisdiction over a class of claims: summary disposition is independently proper under MCR 2.116(C)(4) "when a plaintiff has failed to exhaust its administrative remedies." *Rudolph Steiner Sch of Ann Arbor v Ann Arbor Charter Twp*, 237 Mich App 721, 730; 605 NW2d 18 (1999). Furthermore, "where a collective bargaining agreement mandates that internal remedies be pursued to resolve disputes, a party must exhaust those remedies before filing a court action." *AFSCME, AFL-CIO Mich Council 25 v Highland Park Bd of Educ*, 214 Mich App 182, 191; 542 NW2d 333 (1995), aff'd 457 Mich 74 (1998). "The courts require the exhaustion of union remedies in order to advance the policy of encouraging a nonjudicial resolution of labor disputes." *Id*. at 187. "It is well established that where an administrative grievance procedure is provided, exhaustion of that remedy, except where excused, is necessary before review by the courts." *Bonneville v Mich Corrections Org, Serv Employees Int'l Union, Local 526M, AFL-CIO*, 190 Mich App 473, 476; 476 NW2d 411 (1991).

Plaintiff primarily contends that there was in fact no grievance process available, making it logically impossible for him to fail to exhaust any such process. Specifically, plaintiff asserts that because only the state and the union are signatories to the CBA, individuals are not parties to the CBA and therefore have no recourse to the grievance process the CBA provides. We disagree.

Article 9 of the CBA clearly provides a grievance process for individual DOC employees who are members of the MCO SEIU for alleged violations of the CBA's provisions. Article 9, § A defines a grievance as follows:

> A grievance is defined as a written complaint alleging there has been a violation, misinterpretation or misapplication of any provision of this Agreement; alleging a violation of any condition of employment established or continued in this Agreement, or in any Employer rule, policy, law, procedure, or regulation . . .

To support his argument that individual employees do not have the ability to pursue a grievance under the CBA, plaintiff points to the following language contained in Article 9 of the CBA:

> Where an employee withdraws from a grievance as part of a settlement in a lawsuit pertaining to the same facts giving rise to the grievance, such withdrawal by the employee from the grievance shall not impair the right of the Union to pursue the grievance principles to protect the collective interests of the Bargaining Unit members as a whole.

However, the contractual language on which plaintiff relies is clearly predicated on the understanding that an individual employee can file a grievance. Unless an individual employee had the ability to file a grievance, he or she would not have the ability to withdraw that grievance, as provided by this paragraph of the CBA. Furthermore, the immediately following paragraph of the CBA sheds additional light on this topic. The CBA provides:

> When an individual grievant(s) or MCO is satisfied with the resolution of a grievance offered by the Employer, processing the grievance will end. However, when acting in the collective interests of Bargaining Unit members, the Union may initiate and continue to grieve violation(s) concerning the application or interpretation of this Agreement. Such grievance(s) shall identify, to the extent possible, individual employees and/or classes with examples of employees affected. MCO itself may grieve alleged violations of rights conferred solely upon the Union by the Agreement; such grievance(s) shall be filed at the appropriate step by a Chief Steward or Union officer designated by the Union to act in such capacity.

This contractual language demonstrates, once again, that individual employees have the right to file a grievance under the CBA for an alleged violation of their rights under the contract. However, the contract provides that when an individual employee decides to withdraw their grievance or accepts the employer's offer to settle the grievance, the union has a separate contractual right to continue the grievance process in order to protect the rights of other affected employees. While the contractual language indicates that the union does have the right to pursue grievances under the CBA, it does not support plaintiff's argument that individual employees have no ability to file grievances under the CBA.[1]

---

[1] The CBA describes many contractual rights specific to individual employees, including rights in such categories as disciplinary action (Article 10); health and safety (Article 12); seniority (Article 13); layoff and recall procedure (Article 14); assignment, vacancy and transfer (Article 15); hours of work and scheduling (Article 16); overtime (Article 17); holidays (Article 18); leaves of absence without pay (Article 19); personnel files (Article 20); and wages and longevity (Article 27). These are rights specific to individual employees, not to the union. Under the CBA, an individual employee has the right to file a grievance regarding any perceived violation of these individual contractual rights because Article 9, § A of the DBA defines a grievance as "a

Furthermore, this Court's opinion in *Bonneville* demonstrates that individual corrections officers employed by the DOC have the ability to file a grievance for alleged violations of their rights under the CBA. In *Bonneville*, 190 Mich App at 474, ten corrections officers filed a grievance under the CBA, claiming that they were performing work at a higher classification than that for which they were being paid. The union pursued the employees' grievance through the third step of the grievance procedure, but the claim was denied. The union decided not to take the employees' grievance to arbitration and the employees filed suit in circuit court against the union, alleging a breach of the union's duty of fair representation. *Id*. at 474-475. Although the lawsuit involved a claim against the union, rather than the DOC, it nonetheless demonstrates plainly that individual employees of the DOC who are members of the MCO SEIU have the ability to file grievances under the CBA, contrary to plaintiff's claim in this case.

Plaintiff asserted that he was entitled to a copy of his personnel file under Article 20 of the CBA and that plaintiff submitted a written request to Geiger for a copy of a document that he believed to be part of that personnel file. When Geiger declined plaintiff's request to obtain a copy of the document he sought, plaintiff could have filed a grievance to contest the DOC's alleged failure to honor the contractual rights that he claimed under Article 20 of the CBA. Plaintiff chose not to file a grievance but filed this court action instead. Because plaintiff failed to file a grievance, he failed to exhaust his administrative remedies. See *Bonneville*, 190 Mich App at 476. We therefore affirm the trial court's ruling that plaintiff's breach of contract claim is barred by his failure to exhaust administrative remedies available to him under the CBA.[2]

Plaintiff next argues that the doctrine of judicial estoppel bars defendants from arguing that AIPAS report #9010 is not a personnel record within the meaning of the ERKA, because of the position taken by the DOC in *Booth I* and this Court's ruling in that case. We disagree. We hold that judicial estoppel does not preclude defendants from arguing that the AIPAS report is exempt from disclosure under the ERKA. However, we also hold that the trial court's ruling in defendants' favor was premature.

Judicial estoppel is an equitable doctrine. When reviewing equitable actions, this Court reviews the trial court's decision de novo. *Spohn v Van Dyke Pub Schs*, 296 Mich App 470, 479; 822 NW2d 239 (2012). The doctrine of judicial estoppel prohibits a party who has successfully and unequivocally asserted a position in a prior case from asserting a wholly inconsistent position in a subsequent proceeding. *Paschke v Retool Indus*, 445 Mich 502, 509-510; 519 NW2d 441 (1994). Plaintiff contends that defendant previously took the position that the AIPAS report was a personnel record for purposes of the FOIA's exemptions to the statutory mandate that public records must be disclosed upon request, so defendant may not now take the position that the AIPAS report is not a personnel record pursuant to the ERKA.

---

written complaint alleging that there has been a violation, misinterpretation or misapplication of *any* provision of this Agreement."

[2] Because plaintiff's breach of contract claim is barred by his failure to exhaust administrative remedies available to him under the CBA, we decline to address plaintiff's argument regarding the applicability of the state of Michigan civil service rules.

In *Booth I*, this Court construed statutory language to determine whether the DOC properly denied plaintiff's FOIA request. The FOIA exemption in question was set forth under the Corrections Code, in MCL 791.230a, which provides, "The home addresses, telephone numbers, and personnel records of employees of the department . . . are exempt from disclosure under the freedom of information act." Although this particular exemption statute does not provide an express definition for the term "personnel record," as that term is used in the FOIA, the *Booth I* panel drew a definition for that term from *Landry v City of Dearborn*, 259 Mich App 416, 422-423; 674 NW2d 697 (2003), concluding that the term covered "records that relate to any facet of the employment process." *Booth I*, slip op at 3. The plain and ordinary meaning of the term "personnel record" in another part of the FOIA, MCL 15.243(1)(s)(*ix*), "includes all records used by law enforcement agencies in the selection or hiring of employees." See *Landry*, 259 Mich App at 422.

The present lawsuit was not brought pursuant to the FOIA but was brought pursuant to the ERKA, which provides in relevant part:

> An employer, upon written request which describes the personnel record, shall provide the employee with an opportunity to periodically review at reasonable intervals, generally not more than 2 times in a calendar year or as otherwise provided by law or a collective bargaining agreement, the employee's personnel record if the employer has a personnel record for that employee. The review shall take place at a location reasonably near the employee's place of employment and during normal office hours. [MCL 423.503.]

In contrast with the exemption under consideration in *Booth I*, the ERKA specifically defines the term "personnel record." In addition, the ERKA specifically excludes certain documents from the ambit of the term "personnel record." As the ERKA statute provides:

> (c) "Personnel record" means a record kept by the employer that identifies the employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action. A personnel record shall include a record in the possession of a person, corporation, partnership, or other association who has a contractual agreement with the employer to keep or supply a personnel record as provided in this subdivision. A personnel record shall not include:

> \* \* \*

> (v) Information that is kept separately from other records and that relates to an investigation by the employer pursuant to section 9. [MCL 423.501(1)(c)(*v*).]

Section 9, referenced in the exception, in turn provides:

> If an employer has reasonable cause to believe that an employee is engaged in criminal activity which may result in loss or damage to the employer's property or disruption of the employer's business operation, and the employer is

-6-

engaged in an investigation, then the employer may keep a separate file of information relating to the investigation. Upon completion of the investigation or after 2 years, whichever comes first, the employee shall be notified that an investigation was or is being conducted of the suspected criminal activity described in this section. Upon completion of the investigation, if disciplinary action is not taken, the investigative file and all copies of the material in it shall be destroyed. [MCL 423.509(1).]

Critically, defendants argue that AIPAS report #9010 does not qualify as a personnel record *within the meaning of the ERKA* because the document falls within the exception set forth in MCL 423.501(1)(c)(*v*).

The trial court correctly rejected plaintiff's judicial estoppel argument. A document can qualify as a personnel record for purposes of FOIA because it is a record that relates "to any facet of the employment process," regardless of whether the document was stored outside a personnel file. *Booth I*, slip op at 3. However, such a document would not qualify as a personnel record under ERKA if it is a document "that is kept separately from other records and that relates to an investigation by the employer pursuant to section 9" of the ERKA. MCL 423.501(1)(c)(*v*). Stated more simply, two different statutes may provide different definitions for the same term, and it is not intrinsically contradictory to assert that something fits one of those definitions but not the other. The AIPAS report at issue in this case can qualify as a personnel record under the FOIA statute even though it is exempted from the definition of personnel record under the ERKA. This argument is not a legal position wholly inconsistent with the legal position previously taken by the DOC. Therefore, the doctrine of judicial estoppel does not apply to this argument. See *Paschke*, 445 Mich at 509-510.

Nevertheless, plaintiff's final argument is that the trial court improperly determined that not only *could* the AIPAS report be considered exempt from disclosure under the ERKA, it in fact *was* exempt from disclosure under the ERKA. We agree.

We note first that the trial court purported to grant summary disposition pursuant to MCR 2.116(C)(4), (8), and (10). Clearly, MCR 2.116(C)(4) is inapplicable to this issue. When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A motion brought under MCR 2.116(C)(8), which tests the legal sufficiency of the complaint, should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the non-moving party. *Id*. at 119. We find that summary disposition could not have possibly been proper under either subrule.

When deciding a motion under MCR 2.116(C)(10), the trial court generally "should not grant summary disposition unless no fair likelihood exists that additional discovery would reveal more support for the nonmoving party's position." *Wurtz v Beecher Metro Dist*, 495 Mich 242, 258; 848 NW2d 121 (2014). Although a party opposing a motion for summary disposition must provide some support for the assertion that a dispute truly exists even if discovery is incomplete,

*Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994), such support needs only rise above the level of being conjecture. *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d (1993). As noted, not only was discovery incomplete, but defendants filed their motion for summary disposition in lieu of an answer, and thus no discovery occurred at all. As also noted, summary disposition under MCR 2.116(C)(8) would only have been proper if *no* facts could *possibly* support a recovery under the complaint.

Plaintiff alleged, *inter alia*, that the AIPAS report is part of his personnel file and must be disclosed under the ERKA. Defendants, in their motion for summary disposition, made a wholly unsupported bare assertion—in fact, mostly by necessary implication—that the AIPAS report was not disclosable because it contained some manner of investigation into criminal activity. As is readily apparent from our discussion above, whether the AIPAS report is in fact exempt from disclosure depends entirely on its substantive contents. If it does not in fact fit a scenario described in MCL 423.509(1), then that would be a fact that would warrant recovery by plaintiff. Consequently, summary disposition pursuant to MCR 2.116(C)(8) was improper.

Likewise, even though the nonmoving party on a motion under MCR 2.116(C)(10) must provide some support for surviving the motion, all the trial court had before it was a bare assertion from defendant; deciding the motion in favor of defendants necessarily entailed making an impermissible factual judgment. See *Price v Kroger Co of Mich*, 284 Mich App 496, 500; 773 NW2d 739 (2009). Given that the only evidence plaintiff could have provided to combat this motion was in the hands of defendants, which would require plaintiff to disprove defendants' unsupported assertion which is impossible *where no discovery had taken place*. More importantly, although defendants are within their rights to argue that the same file should receive different treatment under different statutes, as discussed above, we find that defendants have taken a different and incompatible *factual* position in this case from a position taken previously. We previously determined that defendant had identified AIPAS as:

> a database that tracks the Department's investigations of employees to determine whether they have violated work rules and such reports address the employee's work performance. The Department keeps these records to evaluate employee performance. [(*Booth I*, slip op at p 4)].

It is *possible* that either defendant or this Court previously omitted some details. However, violating work rules is not the same as violating criminal laws. Under the circumstances it was improper for the trial court simply to accept defendant's bare assertion at face value without at least reviewing the challenged AIPAS report in camera. The trial court should have recognized that there was a genuine and critical evidentiary dispute that precluded summary disposition, and that the dispute could have been easily resolved without making unsupported and unsupportable factual findings.

We affirm the trial court's determination of its subject-matter jurisdiction and its grant of summary disposition in favor of defendants as to plaintiff's breach of contract claim. We reverse the trial court's grant of summary disposition as to plaintiff's ERKA claim, and we remand the matter for further proceedings. On remand, we order the trial court to review the challenged AIPAS report in camera and on that basis make a factual determination of whether it satisfies the criteria of MCL 423.509(1). The trial court may then proceed with further proceedings, not

inconsistent with this Court's opinions in this matter, as the trial court deems appropriate. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Anica Letica